**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Brian John Diederich,<br><br>                                        Debtor(s). | C/A No. 21-02530-HB<br><br>Adv. Pro. No. 21-80065-HB<br><br>Chapter 7<br><br>**Order** |
| John Ken Cox<br>Karen W. Cox,<br><br>                                        Plaintiff(s),<br><br>v.<br><br>Brian John Diederich,<br><br>                                        Defendant(s). | |

The above captioned case came before the Court for trial regarding disputes between Plaintiffs John and Karen Cox and Defendant Brian Diederich. Plaintiffs seek an Order finding a debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). At trial, testimony was received from Plaintiff John Cox, Defendant Brian Diederich, and Sharon Diedrich, and numerous exhibits were admitted. After careful consideration, the Court finds that Plaintiffs have failed to meet their burden of proof and the relief requested in the Complaint is denied.

**FINDINGS OF FACT**

On November 13, 2018, John and Karen Cox entered a contract to purchase real property located at 32 Murifield Way, Spartanburg, SC 29306, from Ray and Leslie Young. On December 10, 2018, an Addendum to the contract provided that, "The seller agrees to finish the roof replacement within 10 days of closing with 30-year architectural shingles in the same color as currently on the home. Weather permitting." The contract provided the closing was to take place on or before December 20, 2018.

Defendant was at all relevant times the principal of Roof Options, Inc. On December 11, 2018, a proposal was made to the attention of Ray Young on letterhead for "Roof Options, Inc." ("Roof Options") regarding roof replacement, signed "Brian Diederich" as follows:

> [B]ased on our recent site visit and inspection Roof Options offers the following proposal for your consideration.
>
> <u>Scope of Work</u>: Asphalt Shingles Roof System (6,300 Square Feet) Tear Off
>
> 1. Perform a pre-job safety inspection by Roof Options loss prevention safety manager to determine all required safety measures to complete the project safely.
> 2. Upload and stage roofing materials and equipment to complete the project.
> 3. Furnish and install new 15 pound felt over wood deck substrate, furnish and install new drip edge to perimeter edges and secure with approved fasteners.
> 4. Furnish and install new 30-year Architectural Asphalt Shingle and install to manufacture specifications.
> 5. Furnish and install new ridge caps and install to manufacturer specifications.
> 6. Furnish and install all new pipe boots and vent flashings and install to manufacturer specifications.
> 7. Clean all debris from premises.
>    Total Cost------$15,000.00[1]

The evidence does not include any details of any payment made by the Youngs or any other party regarding the proposal or subsequent work.

Plaintiff John Cox is a licensed contractor and has specialized in roofing for approximately 28 years. After the sale closing but before completion of the work referenced in the proposal, Plaintiff John Cox realized some shingles were 25-year shingles comingled with 30-year shingles and they were from two different manufacturers. Plaintiff John Cox contacted Defendant regarding his concerns. However, the work continued. The work was completed and both parties recalled that there was another supervising Project Manager on the premises for Roof Options, not Defendant. At trial, the parties discussed "Landmark" shingles as the appropriate selection, but neither the sales contract, addendum, nor proposal required this brand by name. Regardless, the

---

[1] Def. Ex. 1.

roof quality resulting from the mixing of shingles produced an inferior product that did not meet manufacturer's specifications, and Plaintiff John Cox stated that the entire project deviated from the proposal and manufacturer specifications and industry standards.[2]

Plaintiff John Cox testified the mixing of shingles was improper. The alleged deviations from industry standards included reused flashing, the roof's drip edge was not properly installed, and ridge caps and felt lining were not correctly installed to protect the roof.[3] Plaintiff John Cox explained that in his opinion these deviations caused leaking and damage to the home.[4]

Plaintiff John Cox claimed that substandard work damaged the property including damaged gutters, interior leaks, and failure to clean debris from the work. He testified he has spent $1,500.00 thus far to repair the damage to the property and estimated additional costs would be $36,575.00 to replace the roof, replace the gutters and downspouts, clear the underground drains, and repair interior damage. Plaintiffs did not submit any estimates for work needed or bills for work performed.[5] Sharon Diedrich, Defendant's wife, countered a portion of Plaintiff John Cox's testimony. She stated she cleaned the Property prior to the sale and before the roof work. She testified she noticed what appeared to be water damage in multiple places on the interior of the property. During her brief testimony, she appeared credible.

After an opportunity to observe the witnesses, the contrary testimony about interior damage essentially left the Court with doubt regarding whether the interior damage was caused by Roof

---

[2] Pl. Ex. H, CertainTeed Shingle Applicator's Manual, Landmark Series and Landmark TL 12.
[3] Pl. Exs. A-E.
[4] Pl. Exs. I-L.
[5] Although Plaintiffs presented photographs of the exterior problems, there was no supporting documentation for any interior damage.

Option's or Defendant's work or omissions. Further, the testimony regarding the extent and dollar amount of any damage lacked adequate support.

Defendant is a licensed roofer and has been in the roofing business for nearly 30 years. He was not managing the roof installation on Plaintiffs home. He testified that he ordered the materials—Landmark shingles—yet the distributor of the shingles and other construction materials substituted GAF Sovereign shingles without notifying him. He stated he was unaware of the substitution until he was contacted by Plaintiff John Cox after the shingles were installed. He also testified that if he had intentionally ordered the wrong product, this would have only saved Roof Options about $130.00. Defendant testified that he is aware of the manufacturer specifications and industry standards, but application of those recommendations would differ depending on the location, climate, and the condition of the property to which they were applied. Defendant stated that for weeks after he was notified of Plaintiffs' concerns about the work he was unable to contact Plaintiffs again, and once he did, he was told he was no longer allowed on the premises.[6] While his testimony at times appeared vague, his version of the events stated in this paragraph made sense and appeared credible.

On April 10, 2019, Plaintiffs' counsel sent a letter addressed to Roof Options, Inc., c/o Sharon Diederich, Registered Agent, at 34 Muirfield Way, Spartanburg, SC 29306, and to Roof Options, Inc., 250 Carolina [sic] Drive Ext., Roebuck, SC 29376. The letter states that counsel represents Plaintiffs "in regard to the unfair and deceptive acts employed by Roof Options, Inc…" for work on the Property.[7] The correspondence included a 30-day deadline to cure the construction defects and alleged that Roof Options intentionally and deceitfully failed to install the roofing

---

[6] Plaintiffs and Defendant are neighbors.
[7] Pl. Ex. O.

material in accordance with the manufacturer's specifications and/or industry custom. Plaintiffs' counsel stated that if Roof Options failed to cure the defects by the deadline, Plaintiffs would file a lawsuit. It was unclear from testimony if there was a realistic opportunity to address any issues with the roof at this point.

Plaintiffs filed a complaint in the Court of Common Pleas for Spartanburg County, State of South Carolina, against Roof Options and Defendant, individually, asserting causes of action for breach of express and implied warranties, violation of the South Carolina Unfair Trade Practices Act, fraud, and misrepresentation. The state court entered a default judgment for $114,375.00 in favor of Plaintiffs against Defendant and Roof Options.[8] Thereafter Defendant filed a petition under Chapter 7 of the Bankruptcy Code[9] and Plaintiffs initiated this adversary proceeding objecting to the discharge of debt.

## DISCUSSSION AND CONCLUSIONS OF LAW

Section 523(a) provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt: "(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud…."[10]

---

[8] Ray and Leslie Young were named defendants in the state action. C/A No. 2019-CP-42-02373. The following causes of action were against the Youngs: Breach of Contract, Breach of Fiduciary Duty, Negligent Misrepresentation, and Fraud and Misrepresentation. Plaintiff asked the court for relief and judgment against the Youngs in an amount determined at trial, plus attorneys' fees, pre-judgment interest and costs. The record does not indicate the resolution of the claim against the Youngs. *See also* Pl. Exs. M-N.

[9] C/A No. 21-02530, filed September 29, 2021.

[10] *See* ECF No. 31, *Order Denying Defendants' Motion to Dismiss*, entered November 16, 2022. In the Complaint Plaintiffs asserted § 523(a)(4). That Order found that "Plaintiffs allege their relationship to Defendant invoked fiduciary duties, but a review of applicable law brings this essential element into doubt. Without the establishment of a fiduciary duty § 523(a)(4) is inapplicable to this matter." At trial, Plaintiffs did not pursue recovery under § 523(a)(4). Plaintiffs also attached to the Complaint a copy of the state court default judgment. The lack of resulting issue preclusion is discussed in that Order "…[T]he fact that the default judgment from the state court exists, finding Defendant owes a debt to Plaintiffs in the amount of $114,375.00 for the reasons set forth therein, does not

For a debt to be nondischargeable based on a false pretense or false representation, the creditor must prove: (1) that the debtor made a representation; (2) that at the time the representation was made, the debtor knew it was false; (3) that the debtor made the false representation with the intention of defrauding the creditor; (4) that the creditor justifiably relied upon the representation; and (5) that the creditor was damaged as the proximate result of the false representation. *In re Brush*, 460 B.R. 448, 455-56 (Bankr. D.S.C. 2011). "A plain reading of the subsection demonstrates that Congress excepted from discharge not simply any debt incurred as a result of fraud but only debts in which the debtor used fraudulent means to obtain money, property, services, or credit." *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007). "A false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false impression, while a false representation involves an express representation." *In re Scarlata*, 127 B.R. 1004, 1009 (N.D. Ill. 1991) (citing *In re Guy*, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988), *aff'd in part sub nom. Matter of Scarlata*, 979 F.2d 521 (7th Cir. 1992)). "A false representation or pretense requires a knowing and fraudulent falsehood that describes past or current facts and is relied upon by the other party." *In re Mileski*, 416 B.R. 210, 226 (Bankr. W.D.N.C. 2009) (emphasis in original). "The failure to perform a mere promise is not sufficient to make a debt nondischargeable, even if there is excuse for the subsequent breach." *In re Goodale*, 604 B.R. 252, 254 (Bankr. D.S.C. 2019) (quoting 4 *Collier on Bankruptcy* ¶ 523.08 (16th ed. 2019)); *see also Strum v. Exxon Co.*, 15 F.3d 327, 331 (4th Cir. 1994).

Plaintiffs contend that Roof Options and Defendant violated applicable building codes and deviated from industry standards, but Plaintiffs failed to offer evidence that any building codes were violated, and the evidence was insufficient for the Court to find that any alleged deviation

---

conclusively determine that any amount in question here is excepted from discharge pursuant to § 523(a)(2)(A) or (4)."

from industry standards rises to the level of false pretenses, a false representation, or actual fraud. Although Plaintiffs contend Defendant or Roof Options intentionally ordered the wrong materials to spend less on the project, Defendant testified to the contrary, and explained that if done intentionally the difference in materials would only have been approximately $130.00. Defendant testified he, on behalf of Roof Options, ordered the appropriate materials in compliance with the proposal, but non-conforming materials were delivered by the supplier and installed before he became aware that they were not what was allegedly ordered. There is no evidence to the contrary.

The evidence here indicates that Roof Options made a proposal to the Youngs, later deviated from that proposal, performed substandard work, installed inappropriate materials incorrectly, and failed to properly supervise workers. Although there is evidence of substandard work and performance, the evidence does not rise to the level required to except a debt from discharge. If the Court could find an express or implied representation was made by Defendant to Plaintiffs (rather than by Roof Options or Defendant to the Youngs), Plaintiffs have failed to show that Defendant knew it was false and made the false representation with the intention of defrauding Plaintiffs. Further, Plaintiffs have failed to show that Defendant employed false pretenses, a false representation, or actual fraud to obtain money, property, services, or credit, or that any relevant debt was incurred as a result of such conduct.

**IT IS THEREFORE, ORDERED** that any debt owed to Plaintiffs by Defendant <u>is not</u> excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

**FILED BY THE COURT**
**04/17/2023**



Chief US Bankruptcy Judge
District of South Carolina

Entered: 04/17/2023